# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CHRIS CORSELLO**                                                                                            **PLAINTIFF**

**V.**                                **CIVIL ACTION NO. 2:14-CV-130-KS-MTP**

**STATE FARM FIRE & CASUALTY COMPANY**                                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part and denies in part** State Farm's Motion for Summary Judgment [36].

## I. BACKGROUND

This is a liability insurance coverage case arising from a personal injury lawsuit. State Farm Fire & Casualty Company ("State Farm") issued Homeowners Policy No. 24-CH-9259-7 [36-1] to Richard W. Whitman, insuring his home in Meridian, Mississippi. Whitman's son, Richard Neal Whitman ("Neal"), lives with his father at the property.

On October 10, 2012 – during the policy period – Neal invited Plaintiff to the property. Neal was asleep when Plaintiff arrived, and when Plaintiff woke him, Neal shot Plaintiff with a hand gun, injuring him. Plaintiff later filed a civil suit against Richard and Neal Whitman [36-4] in the Circuit Court of Lauderdale County, Mississippi. He asserted a claim of negligence against Neal, and claims of negligent entrustment and supervision against Richard.

Plaintiff later filed this case against State Farm, seeking a declaratory judgment that its Homeowners Policy [36-1] provides coverage for the negligence claims asserted

against Richard and Neal Whitman, and that State Farm has a duty to defend and indemnify Richard and Neal Whitman against his claims. State Farm removed [1] the case to this Court and later filed a Motion for Summary Judgment [36], which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III. DISCUSSION

State Farm argues that it has no duty to defend or indemnify Richard and Neal Whitman against Plaintiff's claims in the underlying suit. "Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separable duties requiring the use of different standards." *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). To determine whether an insurance company has a duty to defend its policyholder against suit, the Court looks "at the facts alleged in the complaint, together with the policy." *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). "[A]n insurer's duty to defend is triggered when the allegations of the complaint reasonably bring a claim within the coverage of its policy." *Carl E. Woodward, LLC v. Acceptance Indem. Ins. Co.*, 749 F.3d 395, 398 (5th Cir. 2014) (quoting *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006)) (punctuation omitted). There is no duty to defend if "the alleged conduct falls outside the policy's coverage," but if the insurer "becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Lipscomb*, 75 So. 3d at 559.

"Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of the litigation, when liability is established, if at all." *Bradley*, 647 F.3d at 531. "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the

3

underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.* Typically, though, "if there is no duty to defend, there can be no duty to indemnify." *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n*, 442 F. Supp. 344, 346 n. 1 (S.D. Miss. 2006).

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

The policy [36-1] provides two types of coverage relevant to the Court's analysis. First, it provides personal liability coverage ("Coverage L"):

> COVERAGE L – PERSONAL LIABILITY
>
> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

Exhibit A to Motion for Summary Judgment at 31, *Corsello v. State Farm*, No. 2:14-CV-130-KS-MTP (S.D. Miss. May 6, 2016), ECF No. 36-1. The policy also provides medical payments coverage ("Coverage M"):

> COVERAGE M – MEDICAL PAYMENTS TO OTHERS
>
> We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury.

*Id.* Neither Coverage L nor Coverage M apply to:

> a.  bodily injury or property damage:
>
> (1) which is either expected or intended by the Insured; or
>
> (2) which is the result of willful and malicious acts of the Insured.

*Id.* at 32. Likewise, the policy defines an "occurrence" as "an accident . . . which results

5

in . . . bodily injury . . . during the policy period." *Id.* at 18.

In summary, Coverage L only covers "damages because of bodily injury . . . caused by an occurrence," *id.* at 31, which is defined as an "accident." *Id.* at 18. Coverage M only covers "medical expenses incurred . . . within three years from the date of an accident causing bodily injury." *Id.* at 31. And neither Coverage L nor Coverage M cover "bodily injury . . . which is either expected or intended by the Insured," or "which is the result of willful and malicious acts of the Insured." *Id.* at 32.

It is undisputed that Neal Whitman shot Plaintiff on the premises insured by the subject policy, and that the shooting occurred during the policy period. But the parties disagree as to whether the shooting was an accident.

### A.   *Coverage L – Neil Whitman*

First, Defendant argues that the policy does not provide coverage under Coverage L because Plaintiffs have not alleged an "occurrence," within the policy's definition. As noted above, the policy defines an "occurrence" as "an accident . . . which results in . . . bodily injury . . . during the policy period." *Id.* at 18.

The Mississippi Supreme Court has addressed insurance policies with similar definitions of an "occurrence." *See, e.g. Architex Assoc., Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148 (Miss. 2010); *United States Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196 (Miss. 2002); *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507 (Miss. 1985). The Court surveyed its jurisprudence on this subject in *Architex*, and highlighted a general rule that "the only relevant consideration is whether . . . the chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and

controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." *Architex*, 27 So. 3d at 1157-58 (quoting *Moulton*, 464 So. 2d at 509). "[E]ven if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage" under this definition of an "occurrence." *Id.* at 1158. Therefore, "a claim resulting from intentional conduct which causes foreseeable harm is not covered," *id.*, and this definition of an "occurrence" does not encompass "negligent actions that are intentionally caused by the insured." *Id.* at 1159; *see also Moulton*, 464 So. 2d at 510.

In the specific context of a liability insurance claim arising from a shooting, the Mississippi Supreme Court has held that "an act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." *S. Farm Bureau Cas. Ins. Co. v. Allard*, 611 So. 2d 966, 968 (Miss. 1992). Additionally, the Mississippi Court of Appeals has held that if a policyholder "intended to discharge the firearm, his actions were not an 'accident' or 'occurrence' as required by the policy." *Lambert v. Safeco Ins. Co. of Am.*, 87 So. 3d 1123, 1128 (Miss. Ct. App. 2012); *see also Berry v. McLemore*, 795 F.2d 452, 458 (5th Cir. 1986) (where it was uncontested that defendant intended to fire his gun, the resulting injury was not caused by an 'accident'). Therefore, coverage hinges on whether Neil Whitman intentionally or accidentally fired the gun.

In his statement to the police, Whitman described the events as follows:

> I was messing with the gun I bought from this dude the other day, and I guess I fell asleep with it in my hands.

7

> So, I guess I fell asleep, and after a little while I felt someone grab me on my shoulders and shake me and I guess he was trying to scare me or something. I was sleeping with this gun that I got. I was fooling around with it before I fell asleep.
>
> I guess they like startled me or something and Chris said he was trying to wake me up. . . . I was sitting on my futon and I seen one figure come around the motorcycle and the other one came around the back . . . .
>
> So when he startled me I opened my eyes and I seen like these two black figures in front of me and I guess it scared me and my garage door was open. I didn't even know I had shot him until he fell down and was hollering. . . .
>
> So then I went and woke up my Dad and told him that I had shot Chris and we needed to get him to the Hospital and I was like freaking out and I went back to Chris and I told him I was sorry I didn't mean to shoot him and that it was an accident. Christ was lying over on his stomach and I just kept telling him I didn't mean to shoot him that I didn't know it was him.
>
> \* \* \*
>
> I didn't shoot it but once and it was an accident. I didn't know it was Chris and I had the garage door open and I didn't know who it was and I just seen the two black figures and when one of them grabbed me I shot and it was Chris. But I didn't mean to shoot him.

Exhibit B to Motion for Summary Judgment at 15-16, *Corsello v. State Farm Fire & Cas. Co.*, No. 2:14-CV-130-KS-MTP (S.D. Miss. May 6, 2016), ECF No. 36-2.

When asked by a police officer whether Neil Whitman intentionally shot him, Plaintiff initially responded: "I think it was intentional because he looked at me directly in the eye and knew who I was and I don't know why he would shoot me. I don't think it was accidental." *Id.* at 6. Despite this statement, Plaintiff later requested that the aggravated assault charge against Neil be dropped because he believed "it was

8

an accident because I woke him up and startled him. I was supposed to meet him at his house earlier that night but ran a couple hours late and he had fallen asleep." Exhibit F to Motion for Summary Judgment, *Corsello v. State Farm Fire & Cas. Co.*, No. 2:14-CV-130-KS-MTP (S.D. Miss. May 6, 2016), ECF No. 36-6. The state court honored Plaintiff's request and entered an Order of Nolle Prosequi. Exhibit A to Response to Motion for Summary Judgment, *Corsello v. State Farm Fire & Cas. Co.*, No. 2:14-CV-130-KS-MTP (S.D. Miss. May 9, 2015), ECF No. 38-1. Finally, in his responses to Defendant's interrogatories, Plaintiff stated: "When Plaintiff arrived, Whitman was asleep in the garage with the garage door open. When Plaintiff attempted to wake Whitman, he woke up disoriented and negligently discharged a gun causing injuries to Plaintiff." Exhibit E to Motion for Summary Judgment at 5, *Corsello v. State Farm Fire & Cas. Co.*, No. 2:14-CV-130-KS-MTP (S.D. Miss. May 6, 2015), ECF No. 36-5.

"Where, as here, resolution of the dispositive issue necessitates a determination of one's state of mind, Courts should use great caution in deciding that issue on summary judgment . . . ." *Allstate Prop. & Cas. Ins. Co. v. Hunter*, No. 4:12-CV-90-DMB-JMV, 2014 U.S. Dist. LEXIS 181844, at *19 (S.D. Miss. Sept. 4, 2014). In the Court's opinion, there exists a genuine dispute of material fact as to whether Neil Whitman intended to discharge the firearm. Whitman told police that he fell asleep holding the gun, that Plaintiff startled him, and that he "didn't even know [he] had shot" Plaintiff until he saw Plaintiff on the ground. Exhibit B [36-2], at 15-16. If a jury believed these statements, they could reasonably conclude that Whitman did not

9

intend to fire the gun.[1] Therefore, the Court must deny State Farm's motion with respect to coverage under Coverage L for Plaintiff's claims against Neil Whitman.

### B. *Coverage M – Neil Whitman*

Coverage M only covers "medical expenses incurred . . . within three years from the date of an *accident* causing bodily injury." Exhibit A [36-1], at 31 (emphasis added). As provided above, there is a genuine dispute of material fact as to whether Neil intended to fire the gun – whether the shooting was, in fact, an accident. Therefore, the Court must deny State Farm's motion as to coverage under Coverage M for Plaintiff's claims against Neil Whitman.

### C. *Richard Whitman*

In response to Defendant's interrogatories, Plaintiff stated twice that: "Plaintiff conceded, via the Complaint for Declaratory Judgment, that the claims of 'negligent entrustment' and 'negligent supervision' asserted against Richard Whitman in Plaintiff's Amended Complaint likely fall within the exclusions contained with the State Farm policy at issue in this case. Plaintiff is not pursuing coverage of those two claims in this federal court dec action." Exhibit E [36-5], at 8, 9. Accordingly, the Court finds that Plaintiff conceded his claims of negligent entrustment and negligent supervision.

### D. *Intentional Acts Exclusion*

---

[1] Defendant repeatedly asserts in briefing that Neil told the police that he intended to discharge the gun. Candidly, this is a misrepresentation of the evidence. At best, Neil's statement is ambiguous on this point.

Neither Coverage L nor Coverage M cover "bodily injury . . . which is either expected or intended by the Insured," or "which is the result of willful and malicious acts of the Insured." Exhibit A [36-1], at 32. Defendant argues that its policy provides no coverage for Plaintiff's claims against Neil Whitman because the alleged injury was "either expected or intended by the Insured . . . ." *Id.* For the same reasons provided above, the Court finds that there exists a genuine dispute of material fact as to whether Neil intended to fire the gun.

### IV. CONCLUSION

For these reasons, the Court **grants in part and denies in part** State Farm's Motion for Summary Judgment [36]. The Court grants the motion as to Plaintiff's claims against Richard Whitman, but the Court denies it as to Plaintiff's negligence claim against Neil Whitman.

SO ORDERED AND ADJUDGED this 28th day of July, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE